**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

RAGHDA E. FAKHOURY,

    Plaintiff,

v.                                  Case No. 10-14190

AMERICAN GENERAL LIFE INSURANCE
COMPANY,

    Defendant.
                                              /

**ORDER GRANTING SUMMARY JUDGMENT TO DEFENDANT AND DENYING
SUMMARY JUDGMENT TO PLAINTIFF**

      Plaintiff Raghda Fakhoury brings this action against Defendant American General Life Insurance Company seeking payment of insurance proceeds on a lapsed life insurance policy covering her husband, Elias A. Fakhoury (the "Insured"), asserting that Defendant effectively reinstated the policy. The parties have moved for summary judgment against each other on essentially undisputed facts, and the court has concluded a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). At issue is whether an admittedly late payment had been accepted by Defendant such as to continue coverage of the Insured's policy through the date of his death. Because the policy at issue had lapsed as a matter of law before the Insured died, the court must grant summary judgment to Defendant.

## I. BACKGROUND[1]

On November 28, 2000, Defendant's predecessor in interest, The Old Line Life Insurance Company, issued Policy Number MM0145369 (the "Policy"), with coverage in the amount of $200,000 to the Insured. According to Defendant, and not disputed by Plaintiff with any evidence, the Policy lapsed in 2006 for failure to pay the premium when due. The Insured, however, reinstated the Policy by: (1) paying his past due premiums; and (2) completing a reinstatement application. (Def.'s Ex. 2.)

On January 29, 2009, the Insured failed to make a timely payment of his quarterly premium payment. On February 17, 2009, American General sent the Insured a past-due notice informing him of the premium payment due. (Def.'s Ex. 3.) On March 29, 2009, after the 31 day grace period expired, American General sent a Notice of Termination to the Insured, informing him that his Policy had lapsed due to non-payment of premium. (*See* Def.'s Ex. 4.) The letter directed the Insured to contact his agent for information regarding reinstatement.

On April 13, 2009, American General received, processed, and negotiated a check in the amount of $597.58 from the Insured. However, one week later, on April 20,

---

[1]Despite Plaintiff's attempts to cast them otherwise, the material facts of this case are undisputed. In response to several of Defendant's proffered facts, mostly related to letters sent by Defendant, Plaintiff responds that she lacks foundation to admit or deny whether the letters were sent by Defendant or received by the Insured. Under Michigan law "[i]t is presumed that a letter mailed in the due course of business is received." *Good v. Detroit Auto. Inter-Insurance Exchange*, 241 N.W.2d 71, 74 (Mich. Ct. App. 1976) (citing *Long-Bell Lumber Co. v. Nyman*, 108 N.W. 1019 (Mich. 1906)). In the absence of any evidence presented by Plaintiff to rebut this presumption, the court accepts as undisputed that the relevant letters were sent by Defendant and received by Plaintiff.

American General sent the Insured a letter acknowledging his recent payment but informing him that it was unable to apply the payment because his Policy had lapsed. (Def.'s Ex. 6.) The letter further stated that, in order to apply for a reinstatement of the Policy, within 21 days, the Insured was required to provide to American General: (1) an executed reinstatement application; and (2) his quarterly premium payment for April 28, 2009 to July 28, 2009, in the amount of $597.58.

A month after that letter, on May 18, 2009, American General sent the Insured a letter informing him that it was closing his application file and refunding his premium payment under separate cover based on his failure to provide the requested reinstatement materials. (Def.'s Ex. 7.)

The Insured died on May 23, 2009.

On June 2, 2009, the Plainitff submitted a claim on the Policy that is the subject of this lawsuit. On either June 3 or 4, 2009, the Insured's April 13, 2009 payment was returned.[2]

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). "Once the moving party has made that

---

[2]The parties dispute whether the payment was returned on June 3 or June 4, 2009. The dispute is immaterial to the court's analysis.

showing, the nonmoving party cannot rest on its pleadings, but must identify specific facts that can be established by admissible evidence that demonstrate a genuine issue for trial." *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton,* 369 F.3d at 909 (citing *Matsushita*, 475 U.S. at 587). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52.

The existence of a factual dispute alone will not defeat a properly supported motion for summary judgment—the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" (alteration

4

in original) (citation omitted)). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

### III. DISCUSSION

This is a diversity action in which the court applies federal procedural law and state substantive law. *See Legg v. Chopra*, 286 F.3d 286, 289 (6th Cir. 2002) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Plaintiff's complaint initially brought suit under four separate legal theories: breach of contract, unjust enrichment, detrimental reliance, and alleged violations of the Michigan Uniform Trade Practices Act. Early in the litigation, however, the case narrowed to a breach of contract action, in which the parties agreed that resolution of the action would turn on whether the policy was in effect at the time of the Insured's death. (*See* 12/21/10 Preliminary Scheduling Order.) Thus, when Plaintiff filed the initial summary judgment motion, she effectively, and understandably, abandoned the other claims in her complaint and focused solely on the litigation as a breach of contract action. Defendant responded accordingly.

Under Michigan law, an action for breach of contract comprises four elements: 1) existence of a contract, 2) the terms of the contract, 3) breach of the terms, and 4) damages resulting from the breach. *Webster v. Edward D. Jones & Co.*, 197 F.3d 815, 819 (6th Cir. 1999). The primary goal in contract interpretation is to ascertain and effectuate the intent of the parties. To that end, the contract is read as a whole. *Old Kent Bank v. Sobczak*, 620 N.W.2d 663, 666-67 (Mich. Ct. App. 2000). The interpretation of a contract is a question of law. Contractual language is given "its

ordinary and plain meaning if such would be apparent to a reader of the instrument." *Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 780 (Mich. 2003); *accord Raska v. Farm Bureau Mut. Ins. Co. of Michigan*, 314 N.W.2d 440, 440-41 (Mich. 1982); *Kingsley v. Am. Cent. Life Ins. Co.*, 242 N.W. 836 (Mich. 1932).

Insurance policies are construed according to the plain meaning of their terms and if a provision in an insurance policy "is clear and unambiguous, the terms are to be taken and understood in their plain, ordinary, and popular sense." *Clevenger v. Allstate Ins. Co.*, 505 N.W.2d 553, 557 (Mich. 1993). Courts will not rewrite the terms of an insurance policy "as long as the terms do not conflict with pertinent statutes or public policy." *St. Paul Fire & Marine Ins. v. Am. Home Assurance Co.*, 514 N.W.2d 113, 115 (Mich. 1994).

There is no dispute that 1) the terms of the Policy required a quarterly payment on January 28, 2009, 2) the Insured failed timely to make that payment, 3) the Policy provided a thirty-one day grace period, 4) the grace period expired on February 28, 2009, and 5) that "[i]f the premium is not paid before the end of the grace period, insurance will end and this policy will lapse." (*See* Def.'s Ex. 1 at 3.) Thus, on February 28, 2009, the Insured's coverage lapsed.

Although not central the court's analysis, the Insured was notified of the termination of coverage in a letter dated March 29, 2009. Apparently in response to this letter, on April 13, 2009, the Insured mailed a payment in the amount of the past-due January quarterly bill, $597.58. Defendant received and deposited the check. According to Defendant, it deposited the check into a "suspense account until it could determine whether the Insured's lapsed policy would be reinstated." (Def.'s Resp. To

6

Pl.'s Requests to Admit, # 4, Pl.'s Mot. Ex. E.)[3] Plaintiff has proffered no evidence to contradict Defendant's assertion that the check was placed in a suspense account.

One week later, on April 20, 2009, Defendant sent the Insured a letter, enclosing a Reinstatement Application, and informing the Insured that the received payment would not be applied to the contract because it was received after the end of the grace period. (Def.'s Ex. 6.) The letter further instructed the Insured that, to receive coverage, he would need to complete a reinstatement application and remit a check for the next quarterly payment of $ 597.58 within twenty-one days.[4]

The Insured proffered neither the reinstatement application nor the additional payment. Thus, on May 18, 2009, Defendant sent another letter informing the Insured that it was closing his application file and would be returning the premium payment under separate cover. (Def.'s Ex. 7.)

At the time of the Insured's death just five days after the May 18 letter, there is no triable issue showing anything other than that the Insured was no longer covered under the Policy. Under the clear, unambiguous terms of the contract, the Policy had lapsed after the Insured failed to make the January, 2009 quarterly payment by the time the thirty-one day grace period lapsed. Indeed, as Defendant points out, the policy lapsed

---

[3] A "suspense account" is "an account for the temporary entry of charges or credits or especially of doubtful accounts receivable pending determination of their ultimate disposition." Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/suspense%20account, last visited February 27, 2012.

[4] This letter tracks the procedure followed by the Insured in 2006, when he had also missed a timely payment.

according to its own terms, whether or not Defendant had notified Plaintiff of the termination of coverage via letter.

Plaintiff argues that Defendant's retention of the April payment for approximately six weeks during the possible reinstatement process was both "unreasonable" under Michigan law and operated as a waiver of any defense of the assertion of a lapsed policy. Plaintiff's arguments are unavailing.

First, while Plaintiff has identified a venerable Michigan Supreme Court case for the proposition that an insurance company must act with reasonable promptness, *see Robinson v. U.S. Ben. Soc.*, 94 N.W. 211 (Mich. 1903), Plaintiff has identified no authority that the remedy for an alleged unreasonable delay is reinstatement of the lapsed policy in specific contravention of a term of the insurance contract. Morever, in the unlikely event such authority exists, the undisputed facts of this case do not support even a triable issue on reasonableness. Retaining funds in a suspense account for approximately six weeks while giving the Insured a chance to apply for reinstatement is, as a matter of law, well within the bounds of reason.

Similarly, the court also rejects Plaintiff's assertion that Defendant waived the right to assert that the policy had lapsed. Plaintiff primarily relies on *Glass v. Harvest Life Ins. Co.*, 425 N.W.2d 107 (Mich. Ct. App. 1988), in which the court held "[a]n insurer which unconditionally accepts a premium with knowledge of a loss may be found to have waived its right to assert the policy lapse." *Id.* at 108 (citations omitted). In *Glass*, however, the defendant knew the payment was late, knew the insured had died, yet accepted the premium payment anyway and recorded the policy as "current." *Id.* at 108-09. Here, much to the contrary of *Glass,* the record evidence indicates that

Defendant did *not* unconditionally accept the Insured's late payment, did *not* record the policy as current, and did *not* have any knowledge of a loss until June, 2009, well after the proffered late payment was received. Instead, as stated above, Defendant placed the late funds in a suspense account pending the possibility that the Insured would submit a reinstatement application, as he had done in the past. This is as near the opposite of an "unconditional acceptance," *see Glass*, 425 N.W.2d at 108, as can be imagined; it is not enough to create a jury triable issue of fact on the issue of waiver.

Though the timing of the events is unusual, and of course the Insured's death is regrettable for all concerned, the legal issue presented is actually quite clear. The terms of the Policy set forth in plain terms that if an insured fails to timely pay a premium before the grace period expires, "insurance will end and [the] policy will lapse." (Def.'s Ex. 1 at 3.) Such a circumstance undisputedly occurred in this case. As Defendant points out, the Michigan Court of Appeals recently upheld summary disposition to the insurance company, under similar circumstances, where the insured failed to make a timely payment under the terms of the policy. *See Starr v. Farm Bureau General Ins. Co.,* No. 298136, 2011 WL 4375130, *2 (Mich. Ct. App. Sept. 20, 2011). Here, as in *Starr*, there is no genuine issue for trial, and the undisputable lapse in the Policy mandates that summary judgment be granted to Defendant.

### IV. CONCLUSION

IT IS ORDERED that Defendant's motion for summary judgment [Dkt. # 19] is GRANTED and Plaintiff's motion for summary judgment [Dkt. # 16] is DENIED.

A separate judgment will issue.

    S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: February 27, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 27, 2012, by electronic and/or ordinary mail.

    S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C3 ORDERS\10-14190.FAKHOURY.SummaryJudgment.2.wpd